[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 24, 2006
THOMAS K. KAHN
CLERK

No. 05-15310
Non-Argument Calendar

_____

D. C. Docket No. 04-00284-CR-2-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL ANGEL MONDRAGON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 24, 2006)**

Before ANDERSON, BIRCH and BARKETT, Circuit Judges.

PER CURIAM:

Miguel Angel Mondragon appeals his conviction and 192-month sentence

for conspiracy to possess with intent to distribute, and possession with intent to distribute, at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841, respectively. First, Mondragon asserts that the district court erred in denying his motion to suppress evidence collected during a warrantless search because there were no exigent circumstances justifying the warrantless entry. Second, Mondragon argues that the district court erred by enhancing his sentence two points for possession of a firearm. Finally, Mondragon argues that enhancing his sentence two points for obstruction of justice with perjury, based on his testimony at trial, violates his constitutional right to deny guilt and demand that the government prove his guilt beyond a reasonable doubt.

Relying on a tip, Drug Enforcement Agency ("DEA") agents conducted a controlled delivery of 15 kilograms of cocaine to Gilberto Flores, an alleged co-conspirator of Mondragon. Agents placed a sensor in the dashboard of a Chevy Cavalier automobile that was delivered to Flores, in order to monitor access to a compartment where the cocaine had been hidden. Flores drove the car to the residence in question and parked it in a covered garage. After the car was parked, the sensor was activated by someone attempting to access the compartment where the cocaine had been hidden. Because the sensor had been activated, agents entered the premises without a warrant and without permission, to secure the

2

evidence. While conducting a protective sweep of the premises, the agents arrested Flores, who is alleged to have triggered the trip wire, secured the 15 kilograms of cocaine located in the vehicle, encountered Mondragon in an upstairs bathroom, gave him his Miranda warning in Spanish, asked him questions, and secured his consent to search the house. After receiving written consent from Mondragon to search the premises, agents found over eight ounces of cocaine, drug paraphernalia, approximately $700,000 in cash, and a 9mm semi-automatic pistol hidden in the kitchen cupboard.

At trial, Mondragon took the stand in his defense, testifying that he was unaware of any drugs in the stash house, that none of the contraband belonged to him, that he was not involved in a drug conspiracy, and that he had never met any of the charged co-conspirators, including Flores, who was arrested in the house. Mondragon also testified that he did not live at the stash house, and that he had given a friend a ride to the residence. Moreover, Mondragon testified that agents threatened him with 25 years' imprisonment, and that he signed the consent to search form to avoid being beaten. Mondragon did not testify concerning the 9mm pistol found in the residence.

Mondragon was found guilty on both counts. During sentencing, the district judge adopted the Presentence Investigation Report's ("PSI") findings and

3

conclusions, finding that Mondragon was subject to a base offense level of 36 for possessing fifteen kilograms of cocaine, a two-point enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1 for committing perjury during his testimony, and a two-point enhancement for possession of a dangerous weapon, pursuant to U.S.S.G. § 2D1.1(b)(1), for the gun discovered in the kitchen cabinet. Because of the enhancements, Mondragon's adjusted offense level was 40, and with a criminal history category of I, the Sentencing Guidelines range was 292-365 months. The district court departed downward from the suggested range, sentencing Mondragon to 192 months' imprisonment and five years' supervised release.

## DISCUSSION

### I. Suppression of Evidence

A district court's ruling on a motion to suppress presents a mixed question of law and fact. United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999). We accept the district court's factual findings as true unless the findings are shown to be clearly erroneous. Id. at 1240-41. We construe all facts in the light most favorable to the prevailing party below. United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). We review the district court's application of the law to the facts de novo. Id.

4

The Fourth Amendment to the United States Constitution proscribes the government's ability to conduct "unreasonable searches and seizures." A search and seizure inside of a home without a warrant is presumptively unreasonable. United States v. McGough, 412 F.3d 1232, 1237 (11th Cir. 2005). However, if probable cause exists, and exigent circumstances make it impossible or impracticable to obtain a warrant, a warrantless entry will be excused. United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002). This exception "applies only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." United States v. Satterfield, 743 F.2d 827, 844 (11th Cir. 1984) (emphasis added). We have held that the risk of removal or destruction of narcotics is a particularly compelling exigent circumstance. See United States v. Young, 909 F.2d 442, 446 (11th Cir. 1990).

At the suppression hearing, government agents testified that they placed a trip wire inside the dashboard of the car before completing a controlled delivery of the drugs. Agents testified that sometime after following the suspect to the stash house, agents who were monitoring the house determined that the trip wire had been activated, indicating that someone had manipulated the compartment in the car where the drugs were hidden. We find no reversible error in the trial court's conclusion that exigent circumstances existed at the time the trip wire was

5

triggered.  See Young, 909 F.2d at 446.  (holding that an objective, reasonable belief that risk of harm, danger of flight or escape, or possibility that narcotics evidence will be destroyed justifies warrantless search).

## II.  Sentencing Enhancements

We review the district court's factual findings for clear error and its application of the Sentencing Guidelines to those facts de novo.  United States v. Audain, 254 F.3d 1286, 1289 (11th Cir. 2001).  "Pursuant to U.S.S.G. § 2D1.1(b)(1), if a defendant possessed a dangerous weapon during a drug-trafficking offense, his offense level should be increased by two levels."  Id.  Section 2D1.1(b)(1) "requires the government to show by a preponderance of the evidence that the firearm was present at the site of the charged conduct."  United States v. Cooper, 111 F.3d 845, 847 (11th Cir. 1997) (emphasis added).  The commentary to that section explains that it "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1, comment 3.  We have held that "[o]nce the prosecution has shown by a preponderance of the evidence that the firearm was present at the site of the charged conduct, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable. . . .  If a weapon was present, the enhancement applies unless a

6

connection was clearly improbable." Hall, 46 F.3d at 63-64. We cannot say that the district court erred in finding that Mondragon did not meet this burden.

Likewise, we find no clear error in the district court's finding regarding obstruction of justice on the basis of perjured testimony. United States v. Lewis, 115 F.3d 1531, 1538 (11th Cir. 1997). "If (A) the defendant willfully obstructed or impeded . . . the administration of justice during the course of the . . . prosecution . . . and (B) the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct," the court should increase the offense level by two levels. U.S.S.G. § 3C1.1. The examples of conduct governed by this guideline include "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1 comment 4(b).

The argument that this "enhancement impermissibly chills [the] constitutional right to testify . . . has been soundly rejected by both this Circuit and the Supreme Court." United States v. Hubert, 138 F.3d 912, 915 (11th Cir. 1998); see also Dunnigan, 507 U.S. at 96 ("[A] defendant's right to testify does not include a right to commit perjury.").

**AFFIRMED**